LUCKENBACH et al. v. PIERSON et al.

(District Court, S. D. New York. January 8, 1909.)

SHIPPING (§§ 52, 58*)—CHARTER—FORFEITURE—NONPAYMENT OF HIRE.

A claim of a right to forfeit a charter of the steamer Harry Lucken-bach, for nonpayment of hire, decided adversely to the libellants upon the ground that before there was an actual withdrawal of the steamer, the hire in arrears was tendered. Also *held* that as the withdrawal was wrongful, the respondents should offset the damages they suffered thereby against the hire due.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. §§ 52, 58.*

Cancellation. surrender, or rescission of charter of vessel, see note to McNear v. Leblond, 61 C. C. A. 569.]

(Syllabus by the Judge.)

Peter S. Carter, for libellants.

James J. Macklin and Harold R. Small, for respondents.

ADAMS, District Judge. This action was brought by Edgar F. Luckenbach and the Kings County Trust Company as executors of the estate of Lewis Luckenbach, deceased, and others interested in the matter, against Ralph Pierson & Company of St. Louis, Missouri, to recover the charter hire of the steamer Harry Luckenbach from June 11. 1906, to July 18, 1906, at the rate of $5,500 per month, amounting to $6,600. or more correctly to $6,741.95. The owners were, on the expiration of the contract, to pay for coal left in the bunkers at the current market rate at the place of redelivery, which according to the libel, entitled the charterers to a credit of $207.90 for 66 tons of coal, and a further credit of $37.92 for disbursements made by them amounting altogether to the sum of $245.82. The whole amount claimed to be due on the trial was 6, instead of 7, days' hire, from July 12th to July 18th, reducing the claim in that respect from $1,241.93 to $1,064.51, leaving a total claim, including interest, of $6,318.69, which the libellants insisted they were entitled to recover.

The controversy arose out of the construction of a contract between the parties, dated the 9th of November, 1905, for the charter of the steamer, for a period of ten months. This contract contained the following provisions:

"4. That the charterer shall pay for the use and hire of said vessel $5500.00 per calendar month, commencing on and from the date of her delivery as aforesaid, and at and after the same rate for any part of a month; hire to continue until her delivery in like good order and condition to the owner (unless lost) at New York, or Baltimore, Md."

* * * * * * * * * * * *

"Payment of said hire to be made in cash semi-monthly in advance, or as agreed."

* * * * * * * * * * * *

"And in default of such payment the owners shall have the faculty of withdrawing said steamer from the service of the charterer. without prejudice to any claim they (the owners) may otherwise have on the charterers in pursuance of this Charter."

* * * * * * * * * * * *

"It is understood that $5500 is to be deposited in the German-American Bank of New York on December 20, 1905, and monthly thereafter to the joint account of Lewis Luckenbach and Lind & Co."

The libel alleges, and such allegations are admitted by the answer, as follows:

"That said $5500.00 was deposited, but thereafter, on or about the 28th day of March, 1906, an agreement was executed by Lewis Luckenbach, on behalf of the libellants, and by Ralph Pierson & Co., on behalf of the respondents, amending the former agreement as to the deposit of $5500, and substituting in the place and stead of said deposit one hundred (100) shares of common stock of the Pennsylvania Railroad Company, to be held subject to the terms and conditions mentioned in said Charter Party. That said shares of common stock were to be held as a continuing and permanent security or deposit until the termination or cancellation of the said Charter Party. * * *"

The libel further alleged, in the 6th paragraph, as follows:

"That the respondents as charterers, failed, and refused on the request of the owners of the steamer, the libellants herein, to make the semi-monthly payments in advance when due, and on account of the non-payment of the charter hire the owners of the steamer, in accordance with the conditions above quoted, elected to cancel the said charter party, which they did by giving notice to the respondents on or about the 27th day of June, 1906. That the said steamer, at the time of cancelling said Charter Party, was on a voyage under said charter, but she was immediately withdrawn when unloaded, and her time is figured up to the time she arrived in New York, in accordance with the terms of Section 4 above quoted."

The respondents' answer to the last allegations was as follows:

"* * * And allege with respect to the balance of said Sixth article of the libel, that the libellants or their representatives without authority, arbitrarily withdrew the steamer mentioned in said libel from the said respondents, although the libellants were amply secured for any charter hire or indebtedness if any, of the said respondents, to the libellants as hereinafter alleged."

The respondents for a further answer alleged as follows:

"Fourteenth: And for further answer to said libel, respondents aver, that in addition to the security hereinbefore mentioned, of the Common Stock of the Pennsylvania Railroad Company as substituted for the deposit of Fifty-five hundred dollars, these respondents, on or about the 5th day of July, 1906 forwarded a certified check to the said libellants for Fifty-five hundred dollars which would be to cover all hire of the steamer to July 12th, leaving intact the said stock of the Pennsylvania Railroad Company, but that said libellants, insisted upon the withdrawal of said steamer from said respondents, and refused to accept the said check, unless the said respondents would consent to a termination or cancellation of said charter of said steamer, and that said check has always been held at the command and order of the said libellants. That also on July 12th, 1906, a certified check was sent to the said libellants by the respondents for the charter hire of said vessel, covering a period from July 11th to July 27th amounting to Twenty-seven hundred and fifty dollars, which the said libellants would only accept, if said respondents would agree, as before mentioned, to the termination and cancellation of the said charter party.

Respondents further allege that on or about the 16th day of July, 1906, and when the said steamer was at Frenchman's Bay, Maine, the said libellants withdrew the said vessel from the said respondents and refused to continue the said charter until its termination, although the said respondents were ready and willing to amply secure them, which they did, and that on account of the premises the said respondents have been put to a great expense in the transportation of cargoes that said respondents had agreed to carry, and which would have been carried by the said chartered steamer during the charter term; and they have sustained serious loss on account of outstanding contracts then existing during the term of the said charter and

before its unwarranted cancellation by the said libellants, and that they are still suffering loss and damage because of their inability to perform their said contracts; and respondents allege that up to the present time their said loss amounts to a sum in excess of the amount claimed by the libellants herein, and all as a result of the withdrawal of the said steamer from the service of the said respondents by the said libellants, and that said respondents claim that they are entitled to off-set and recoup their said losses against the said alleged claim of the said respondents."

November 13, 1905, Lind & Co. of New York were appointed agents of the respondents by the following letter to Mr. Luckenbach:

"With reference to chartering of Steamship 'Harry Luckenbach.' This will advise that Messrs. Lind & Co., No. 1 Broadway, New York will act as agents for us in the handling and disbursement and will pay all hire and transact all other charterers business for our account."

It appears that $5500 were duly deposited in the German American Bank in New York to the joint account of said Lind & Co. and Edgar F. Luckenbach in conformity with the terms of the charter party and that subsequently, in accordance with an agreement made on the 28th day of March, 1906, 100 shares of the common stock of the Pennsylvania Railroad Company were substituted therefor to be held on the terms and conditions mentioned in the last quoted provision of the charter party.

The steamer duly went into the possession of the charterers and payments were made for the hire, in some instances, by consent, from the deposited funds, excepting for the time commencing June 11th at 6 P. M. On the 9th of June, a bill was rendered for the hire to June 27th, $2750. This bill was not paid and on the 27th of June the agent of the libellants wrote to the respondents as follows:

"If I do not receive a check for $2750 for hire of the Steamer 'Harry Luckenbach,' from June 11th to June 27th, due June 11th, and $2750 for the hire of said Steamer from June 27th to July 11th, by four o'clock this afternoon, I will withdraw said steamer from your service as per clause #6 of charter party dated New York, November 9th, 1905."

On the 30th of June the libellants again wrote to the respondents as follows:

"Please take notice that the Master of above Steamer, sailed from Lambert's Point for Frenchman's Bay, with a cargo of Coal, without signing bills of lading, owing to Messrs. Castner, Curran & Bullitt not allowing the Master to insert a clause, whereby we would be protected in our claim for freight.

We are willing to sign bills of lading upon receipt of charter hire for which you are in arrears.

We shall withdraw steamer soon as present trip is completed as per ours of 27th inst."

On the 5th of July the respondents replied to these letters as follows:

"Your favors June 27th and 30th received, contents noted.

We cannot understand your determination to withdraw this Steamer from Charter dated, New York, November 9th, 1905, inasmuch as your Hire Money is guaranteed by the Deposit of Pennsylvania Railroad Stock in the German American Bank to Joint account.

We beg to enclose our Certified Check, value Fifty-five Hundred ($5500) Dollars, in settlement of Hire to July 12th, also our Bill for Commission on same, amounting to One Hundred Thirty-seven Dollars, Fifty ($137.50) cents,

from which you will note we have deducted Interest at the rate of 6% on the Hire due as per agreement.

Kindly receipt enclosed Bills, and return to us in due course."

To this letter the libellants' agent replied, July 6th, as follows:

"If you are willing to pay me $5500.00, I will apply same to cover the defaulted charter hire of the Steamer 'Harry Luckenbach.' But in accepting same it does not, in any way, reinstate said Steamer under charter party heretofore cancelled.

This vessel is open for charter. If you have any freight to offer, I will be pleased to hear from you."

The notice of June 27th did not amount to an actual withdrawal of the vessel. It simply said if the owner did not receive, by 4 o'clock of that day, a check for the hire from June 11th to June 27th and for the further sum due in advance from June 27th to July 11th, they would withdraw the steamer from the respondents' service. On the 30th of June the libellants gave a notice that they would withdraw the steamer as soon as the trip then being made should be completed. She was then on her way to Frenchman's Bay, Maine, with a cargo of coal, and arrived there July 2nd. On the 5th of July, the respondents sent the libellants a certified check for $5500 in settlement of the hire to July 12th. This was refused by the libellants, upon the claim that the vessel had been withdrawn by the letter of June 27th. The vessel remained at Frenchman's Bay until July 16th, when she proceeded to New York. There is nothing to indicate any actual resumption of possession by the owners until after the vessel's arrival in Frenchman's Bay, from where they ordered her to New York.

In view of these facts, I think that while the owners may have been entitled to withdraw the vessel before the charterers tendered the payment of July 5th, they failed to exercise the right, merely giving notice of an intention to withdraw in the future, which had the effect of causing the respondents to tender the payments due. Subsequent tenders were made of hire thereafter becoming due. While the respondents were undoubtedly in default on several occasions, no actual attempt was made by the owners to take advantage of such fact until they resumed possession in July, at which time all payments due had been made or tendered. The owners were at all times amply secured.

Courts of admiralty will enforce existing legal rights, but where there is a claim of a forfeiture, it must clearly and definitely be made to appear that the claiming party is entitled to the severe remedy sought. It had not been so made to appear here.

There should be a decree for the libellants for the hire from June 11th to July 18th, less certain credits. From the whole amount there will be deducted the damages suffered by the respondents by reason of the withdrawal of the steamer. The matter will be referred to a commissioner to ascertain and report the amount due.